**Jose L. DIAZ Plaintiff,**

v.

**John ASHCROFT, Attorney General; United States Department of Justice Defendants.**

**No. CIV.02–2834 CCC/GAG.**

United States District Court, D. Puerto Rico.

Jan. 29, 2004.

**114**

José L. Díaz, Bayamón, PR, pro se.

Ginette Milanés, Special Assistant, United States Attorney, Humberto García, United States Attorney, San Juan, PR, for Defendant.

## OPINION & ORDER

GELPI, United States Magistrate Judge.

This is an action for compensatory and punitive damages brought by the plaintiff, Jose L. Diaz ("Diaz"), acting *pro se*, against John Ashcroft, the Attorney General of the United States, and the United States Department of Justice pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[1] as amended by the Civil Rights Act of 1991. Diaz alleges that he was denied a position with the United States Marshal Service ("USMS") because of his national origin, and that the Puerto Rico division of the USMS has exhibited a pattern or practice of discriminatory decisionmaking with regard to persons who reside in Puerto Rico.

## I. Parties' Positions

The Court has before it Diaz's motion to compel defendants' production of a certain document, Certificate of Eligibility No. XM–DJ–8–000980, in unredacted form. (Docket Nos. 27 and 45). Diaz contends that this document contains vital information on persons interviewed for Deputy

U.S. Marshal selective certification positions, and said information is necessary to prove that other persons who were residents of Puerto Rico were found ineligible for said positions based upon their Spanish proficiency scores. (Docket 45, p. 3 ¶ 12). The defendants counter that Diaz has no standing to assert a pattern or practice discrimination claim, and thus discovery of this evidence is irrelevant to the present action. The defendants also assert that release of this information would violate the Privacy Act. 5 U.S.C. 552(a).

## II. Discussion

Because defendants' argument hinges upon Diaz's assertion of a pattern or practice theory of employment discrimination, it is necessary for the Court to review the two types of disparate treatment theory.

### A. Individual Disparate Treatment Theory

A disparate treatment claim focuses on an employer's reason for an individual employment decision. In short, liability depends on whether a protected trait, for example, race, actually motivated the employer's decision. A disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in the decisionmaking process and had a determinative influence on the outcome. Because evidence of a person's state of mind is often difficult to attain, in 1972 the Supreme Court devised a method of proof, sometimes called the "pretext" model of disparate treatment, under which a plaintiff can prove that an actor intentionally discriminated in making a particular decision by calling into question the reason given for the decision. *McDonnell*

[1]. Title 42 of the United States Code, section 2000e–2(a) states in relevant part: "It shall be an unlawful employment practice for an employer ... to discriminate against any individual because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a).

*Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Presuming that individuals know the real reasons for their actions, the "pretext" model of disparate treatment provides that an employer can be held to have discriminated when the plaintiff establishes a minimal prima facie case and shows that the reason given for the adverse decision is unworthy of credence. *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

B. *Systemic Disparate Treatment Theory*

 In the systemic disparate treatment context, the focus shifts from the individual decisionmaker to the employer as an entity. As with individual disparate treatment, the ultimate inquiry remains framed in terms of state of mind. "To succeed on a claim of systemic disparate treatment, a plaintiff must show that the employer intentionally discriminated, whether by acting pursuant to an express policy of treating members of different groups differently or, in the absence of an express policy, by engaging in a pattern or practice of discrimination." *See Slack v. Havens,* 522 F.2d 1091, 1092–93 (9th Cir. 1975). Because employers rarely adopt expressly discriminatory policies in the face of Title VII, most systematic disparate treatment claims are pattern or practice cases.

 Pattern or practice cases take on a structural form by considering disparities between the makeup of an employer's workforce and the makeup of the pool from which the employer draws its employees. Significant disparities are evidence of discrimination on the theory that, absent an explanation, "it is ordinarily expected that nondiscriminatory hiring [and promotion] practices will in time result in a workforce more or less representative of the racial and ethnic composition of the population in the community from which the employees are drawn." *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 339 n. 20, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). By producing numerical disparities in the workplace as evidence of a system-wide (or division-wide) pattern or practice of discrimination, the Supreme Court in *Teamsters* opened the door for a structural account of disparate treatment, one in which such disparities might trigger an examination of an employer's practices and organizational structures rather than solely one that focuses on the employer's state of mind. Ultimately, statistics are relevant only insomuch as they support an inference of the employer's state of mind. "Statistics showing racial or ethnic imbalances [in systematic disparate treatment cases] are probative only because such imbalance is often a telltale sign of purposeful discrimination." *Id.*

C. *Diaz's Motion to Compel and the Pattern or Practice Method of Proof*

 A pattern or practice method of proof is almost exclusively used in class actions, with individual racial discrimination plaintiffs confined to the *McDonnell Douglas* framework. *Scarlett v. Seabord Coast Line R.R. Co.,* 676 F.2d 1043, 1053 (5th Cir.1982). The Supreme Court has never applied the *Teamsters* method in a private, non-class suit, and has recognized the distinction between individual racial discrimination claims and class actions:

"The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest". The inquiry regarding an individual [disparate treatment] claim is the reason for a particular employment decision, while at the liability stage of a pattern-or practice trial the focus will often not be on individual hiring decisions, but on a pattern of dis-

criminatory decisionmaking. *Cooper v. Fed. Reserve Bank of Richmond,* 467 U.S. 867, 876, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984).

While the Supreme Court has not explicitly stated that the pattern or practice method of proof may never be used in private, non-class suits, other courts have reached this conclusion. *See, e.g., Lowery v. Circuit City Stores,* 158 F.3d 742, 760 (4th Cir.1998) *(vacated on other grounds* 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790); *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 866–67 n. 6 (7th Cir.1985); *Scarlett,* 676 F.2d at 1053. The Court of Appeals for the First Circuit has yet to definitively rule on this issue.

■ Diaz seeks to discover the names of other applicants in an attempt to expose a discriminatory hiring pattern within the Puerto Rico division of the USMS. (Docket 45, p. 3 ¶ 12). Reading his complaint as a whole, Diaz believes that this information is necessary to demonstrate that he too was discriminated against by the USMS because he is of Puerto Rican descent and resides in Puerto Rico. *Id.* Based on Diaz's allegations and the information contained in the record, the scope of discovery relevant to his Title VII claim falls more within the "pretext" model of disparate treatment, insofar as he must demonstrate that the USMS intentionally discriminated against him by calling into question the reason for its adverse decision. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Here, Diaz alleges that the USMS ultimately decided not hire him because he is of Puerto Rican descent and resides in Puerto Rico. In response, the defendants assert that by the time Diaz's application was cleared for employment, there were no vacant positions for Deputy U.S. Marshal in the Puerto Rico division. The core of Diaz's claim is one of individual disparate treatment. The facts alleged and the arguments presented are unique to a claim of individual disparate treatment. Thus, Diaz may discover evidence relevant to the USMS's decision not to hire him, but he may not demonstrate his individual claim of discrimination by producing and analyzing numerical disparities.

### III. *Conclusion*

Given the nature and purpose of the pattern and practice method of proof, and the precedents established by other circuits, this Court finds that the *McDonnell Douglas* method is the only method available to Diaz.

Thus, the Court hereby **DENIES** Diaz's motion to compel (Docket Nos. 27, 38, 43 and 45) based upon a pattern or practice theory of discrimination.

The defendants' motion for summary judgment (Docket No. 33) and the plaintiff's cross-motion for summary judgment (Docket No. 19) will be ruled upon in due course.

The parties shall not file any further motions prior to this Court's disposition of the pending motions for summary judgment.

**SO ORDERED.**