Loretta BURRELL, Linda Brown, Catherine McAfee, John Grant, John McDowell, Phyllis Miller, Susan Robertson, and Karen Sloan, Plaintiffs,

v.

CROWN CENTRAL PETROLEUM, INC., Defendant.

No. 1:97–CV–357.

United States District Court, E.D. Texas, Beaumont Division.

April 2, 2003.

Thomas Walter Umphrey and James Erick Payne of Provost & Umphrey, Beaumont, TX, Michael D. Hausfeld, Victoria C.

Arthaud, and Joseph M. Sellers of Cohen, Milstein, Hausfeld & Toll, Washington DC, Reuben A. Guttman, Brian P. McCafferty and Charles V. Firth of Provost & Umphrey, Washington DC, Cyrus Mehri and Pamela Coukos of Mehri, Malkin & Ross, Washington DC, for Plaintiffs.

Fraser A. McAlpine, James V. Carroll, III, Mark E. Schwartz and Anne Gibson Edwards of Littler, Mendelson Houston, TX, for Defendants.

*AMENDED MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT*

SCHELL, District Judge.

The court enters this amended opinion in order to better explain the reasons for the court's ruling on Plaintiff Linda Brown's allegation that Crown created a racially hostile work environment and to correct three typographical errors.

This matter is before the court on the following motions:

1. Defendant's Motion for Partial Summary Judgment on Plaintiff Catherine McAfee's claims (Dkt.# 80) filed on May 15, 1998.
2. Defendant's Motion for Partial Summary Judgment on Plaintiff Karen Sloan's Claims (Dkt.# 96) filed on June 9, 1998.
3. Defendant's Motion for Partial Summary Judgment on Plaintiff Phyllis Miller's Claims (Dkt.# 99) filed on June 15, 1998.
4. Defendant's Motion for Partial Summary Judgment on Plaintiff John Grant's Claims (Dkt.# 119) filed on July 10, 1998.
5. Defendant's Motion for Partial Summary Judgment on Plaintiff Susan Robertson's Claims (Dkt.# 200) filed on May 14, 1999.
6. Defendant's Motion for Partial Summary Judgment on Plaintiff John McDowell's Claims (Dkt.# 202) filed on May 14, 1999.
7. Defendant's Motion for Partial Summary Judgment on Plaintiff Linda K. Brown's Claims (Dkt.# 205) filed on May 19, 1999.
8. Plaintiffs' Motion to Strike Defendant's Objections to the Declarations of Robertson and McDowell (Dkt.# 233) filed on October 18, 1999.[1]
9. Defendant's Request for a Status Conference (Dkt.# 250) filed on October 9, 2001.[2]

## I. BACKGROUND

A detailed factual and procedural discussion of this case can be found in previous orders of this court. *See generally Burrell v. Crown Cent. Petroleum, Inc.*, 177 F.R.D. 376 (E.D.Tex.1997); *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239 (E.D.Tex.1997). The scope of this case has changed dramatically since its initial filing on June 30, 1997. Initially, this case was brought as a class action in which eight named Plaintiffs wished to certify a class consisting of "[a]ll African–American and/or female persons employed at any Crown Central Petroleum facility in Texas at any time from June 30, 1995 to present,

---

**1.** After reviewing the motion, objections, and declarations, the court GRANTS Plaintiffs' Motion to Strike and will consider the declarations when deciding the motions for summary judgment.

**2.** Because this opinion and order disposes of the Defendant's seven pending motions for partial summary judgment, the Defendant's request for a status conference on those motions is now moot. Therefore, this motion is DENIED as moot.

who have been or continue to be subjected to a hostile work environment based on race and/or sex." That motion was denied by order of this court on November 21, 2000. *See Burrell v. Crown Cent. Petroleum, Inc.*, 197 F.R.D. 284, 292 (E.D.Tex. 2000). On that same day, the court was also presented with a motion for partial summary judgment on Plaintiff Loretta Burrell's claims. Finding no genuine issue of material fact that would have warranted a trial on Burrell's claims, the court granted summary judgment and dismissed Burrell's claims from the case. *See generally Burrell v. Crown Central Petroleum, Inc.*, 121 F.Supp.2d 1076 (E.D.Tex.2000). As a result of these rulings, the remaining Plaintiffs in this case are Linda L. Brown, Catherine McAfee, John Grant, John McDowell, Phyllis Miller, Susan Robertson, and Karen Sloan. All of the remaining Plaintiffs' claims are currently before the court on motions for partial summary judgment.

The remaining Plaintiffs continue to allege that their rights have been violated and that they have been discriminated against on account of their race and/or sex in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5, et seq. ("Title VII") and the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1981 ("Section 1981"). Specifically, Plaintiffs contend that Crown Central Petroleum, Inc. ("Crown") "cultivated an environment that is openly hostile to African–American and female employees." Plaintiffs claim that, among other things, Crown's supervisors often used racial epithets when referring to African–American employees and that supervisors "routinely create, distribute, and post handbills in the workplace" that are offensive and demeaning to African–American and female employees. To redress Crown's alleged discrimination, Plaintiffs seek declaratory, injunctive, and monetary relief, including compensatory and punitive damages.

## II. THE PLAINTIFFS

The following is a brief discussion of each Plaintiff's work history at Crown:

### A. LINDA K. BROWN

In December 1988, Linda K. Brown, an African–American female, was hired by Crown as an Operations or Shift Foreperson. Crown had never hired a shift foreperson from outside of the company prior to hiring Brown. According to Crown, Brown was hired in part because of her race and gender in an effort to increase diversity in supervisory positions at the Pasadena refinery. As a foreperson, Brown was classified as a "salaried exempt" employee and paid at salary grade 11.[3] In her first few years of employment, Brown received favorable evaluations that she believed reflected a fair assessment of her performance. These evaluations lead to several raises during her years at Crown.

---

3. In its Pasadena refinery, Crown has three different pay classifications: (a) hourly, (b) salaried non-exempt, and (c) salaried exempt. An "hourly" employee is one who holds a bargaining unit position within the refinery. As a member of a bargaining unit, the hourly employee's wage rate is determined by the governing Collective Bargaining Agreement ("CBA"), which is negotiated between Crown and the union. Non-bargaining unit employees are assigned a salary grade from 1–16. Each grade contains a set entry-level salary, mid-point salary, and maximum high salary, which comprise the parameters of each grade's salary range and the ranges tend to overlap between the grades. "Salaried non-exempt" employees are primarily administrative positions. The difference between salaried exempt and salaried non-exempt employees is that salaried non-exempt employees receive compensation for overtime.

In 1993, following a reorganization, Brown was laterally moved to the newly created position of Operations Training Coordinator and given a 1% raise. As Training Coordinator, Brown was responsible for reorganizing the training function in the Operations Department.

In March 1995, Brown was given her best evaluation to date with several notations of "Far Exceeded Requirements" and an overall rating of "Exceeding Requirements." That same month, Brown was reassigned to the position of Zone I Supervisor and given a 9.94% raise. Less than six months after her reassignment to Zone I Supervisor, Brown was given the title Zone I Operations Superintendent. After seven months as Zone I Operations Superintendent, Brown received a 7.64% raise.

In February 1996, following the discovery that refinery equipment had been sabotaged, Crown "locked out" its bargaining unit employees in order to prevent further damage to the refinery. As a result of the lockout, it was necessary for Crown to reassign its remaining non-bargaining unit employees, including Brown, to fill the void left by the absent bargaining unit employees. Thus, Brown was transferred to a non-supervisory position as an operator. During this time, Brown did not receive a raise even though she received a "commendable" Employment Performance Review. At the time of the filing of these motions, Brown was working in the refinery's Human Resources Department as Training Coordinator, a Grade 11 position.

### B. SUSAN ROBERTSON

Susan Robertson, a Caucasian female, is an employee at La Gloria Oil and Gas Company ("La Gloria"), a petroleum refinery located in Tyler, Texas. La Gloria is wholly owned by Crown, which purchased La Gloria on October 1, 1989. Robertson began her employment in 1987. Robertson worked in various units of the plant during that year until October 1988 when she bid for and received a sample catcher position in La Gloria's laboratory.[4] In January of 1989, she was promoted, pursuant to the CBA, to the position of lab technician. Three months later, she received another promotion to lab tester. At the time of the filing of these motions, Robertson was still working at the La Gloria refinery as a lab tester. She is the only Plaintiff that works at the La Gloria refinery.

### C. JOHN MCDOWELL

John McDowell, an African–American male, began his employment with Crown on November 19, 1979, working as a general mechanical helper in its Pasadena refinery's Maintenance Department. He is a member of the Oil, Chemical, and Atomic Workers Union ("OCAW") which he joined shortly after he began his employment with Crown. Because McDowell is an OCAW member, he was one of the individuals locked out of the refinery in February 1996.

From the beginning of his employment up until 1990, McDowell worked in various units within Crown's Operation and Recovery Unit. In May of 1990, McDowell bid for and received a position of Vacation/Sick Relief ("VSR") employee in the Oil Management Department. He spent the next four years working in this department. During this time period, McDowell com-

---

4. Under the Collective Bargaining Agreement ("CBA"), Crown is required to post any openings for any Bargaining Unit positions. Crown posts the vacancies on bulletin boards for a period of seven days during which Bargaining Unit employees can place a bid by completing a "bid slip." According to the CBA, the employee with the most seniority is by definition the successful bidder.

mitted several operating errors for which he was either suspended or given additional training. One error was of such a magnitude that it resulted in the shutdown of the Oil Tanking Pipeline. Due to the severity of this error, Crown disqualified McDowell from the Oil Movements Department and transferred him to the Maintenance Department to work as a general mechanical helper. At the time of the lock out, he was still employed in this position. However, at the time of the filing of this lawsuit he had not returned to work.

### D. JOHN GRANT

John Grant, an African–American male, is an hourly employee at Crown's Pasadena refinery. He began his employment with Crown in September of 1974, when Crown hired him to work in the Operations Department at Crown's Pasadena refinery as a Vacation/Sick Relief ("VSR") substitute for operators in the Coker Unit. His duties and responsibilities consisted of filling-in for any absent operators on any shift when a vacancy existed. The VSR position was a bargaining unit position, so Grant was a member of the OCAW, which he joined shortly after his employment with Crown began.

Grant worked in the VSR position until 1976 when he was promoted to a full-time operator position. He worked as an operator in the Coker Unit for the next four years. In 1980, he successfully bid for a position in the Maintenance Department. He worked as a general mechanical helper in this department for approximately one year and then returned to the Coker Unit where he worked for the next three years.

In 1984, Crown added a new unit to its Treatment and Recovery Unit ("TRU"), the Liquid Petroleum Gas Unit ("LPG"). Grant, along with several other hourly employees, successfully bid for employment in the TRU. After receiving training and qualifying for the unit, Grant became a

Stillman on the TRU. He worked at this position for the next eight and a half years until Crown's reorganization in 1993. Crown combined the TRU with the Reformer No. 3 to create Zone III as part of the reorganization. Grant continued to work for Crown on the TRU in Zone III until he was locked out on February 5, 1996. At the time of the filing of these motions, he had not returned to work for Crown.

### E. PHYLLIS MILLER

Phyllis Miller, a Caucasian female, began working at Crown in April of 1976 in the Operations Department at Crown's Pasadena refinery as an operator in the Boiler House Unit. Shortly after her employment began, she became a member of the OCAW.

She worked in the Boiler House for the first three years of her employment. In 1979, she successfully bid for employment in the Maintenance Department in the position of general mechanical helper ("GMH"). As GMH, Miller cleaned the plant and assisted machinists, pipefitters, and welders. Miller herself qualified as a pipefitter in 1985, but she did not successfully bid into that position until 1988. However, she did "step up" into a pipefitter position on a temporary basis prior to becoming a permanent pipefitter. Miller remained in the Maintenance Department until the end of 1991 when she successfully bid to the Oil Movements Department ("OMD"). Miller worked as a relief dock pumper in the OMD for the next year and a half. She was bumped out of this position, under the CBA, because positions were eliminated and she was the most recent hire into the department. After being bumped out of the OMD, she exercised her seniority rights and returned to her position in the Maintenance Department. She remained in this position until

she was locked out on February 5, 1996. At the time of the filing of these motions, she had not returned to work for Crown.

### F. KAREN SLOAN

Karen Sloan, a Caucasian female, started working for Crown at its Pasadena refinery in September 1977 and worked until the lockout in February 1996. Sloan was also a member of the OCAW, and therefore, she was not present at the refinery after the lockout. Sloan worked in various jobs throughout her tenure at Crown, but never received the experience necessary to move into a supervisory position. Although she worked for Crown for almost twenty years, her employment record shows that she was absent from work for almost four and a half of those twenty years. Sloan was locked out on February 5, 1996, and, at the time of the filing of these motions, had not returned to work for Crown.

### G. CATHERINE MCAFEE

Catherine McAfee, an African–American female, began work at Crown in April of 1976. Her first position with Crown was that of a mail clerk, a "salaried non-exempt" position at salary grade 3. She was employed in this position for approximately a year and a half. In 1977, upon hearing of a position in the Joint Ventures Department, McAfee went to her supervisor and told him she wanted to be considered for the position. After submitting her application, McAfee was offered the position of Clerk II in the Joint Ventures Department, which was a salary grade 4.

In 1980, the OCAW went on strike and, although she was not a member, McAfee supported the strike and did not report to work during the entire six month period. She took outside employment during the strike and never informed Crown management of the outside employment. She returned to work for Crown when the strike was over. After the strike, the Joint Ven-

tures Department was eliminated. As a result, McAfee applied for and received a job as Clerk II in the Purchasing Department.

In 1991, she communicated to her supervisor that she would like the opportunity to progress within the Purchasing Department and become a buyer. Her supervisor recommended that she do certain things to advance her skills which would make her qualified for advancement. McAfee did not act on her supervisor's recommendations.

In 1992, she applied for the position of Clerk I in the Purchasing Department, but was not offered the position. However, in 1993 she applied again and received the Clerk I position. As a result of the promotion, she was raised to a salary grade 5.

In February 1996, during the time of the lockout, Crown had to shuffle its remaining employees in order to meet the needs of the company. McAfee was transferred to the warehouse on a temporary assignment to work as a shipping and receiving clerk. She worked at this position until she was transferred back to her position in the Purchasing Department on July 26, 1997. At the time of the filing of these motions, she was working in the Purchasing Department at a salary grade 5.

Of the seven remaining Plaintiffs, three (Brown, McAfee, and Robertson) were still working for Crown on a daily basis at one of its facilities at the time these summary judgment motions were filed. However, four of the Plaintiffs (Grant, McDowell, Miller and Sloan) have not been actively employed by Crown since February 5, 1996.

### III. THE REMAINING CLAIMS

In addition to the changes in this litigation due to rulings by the court, the Plaintiffs have voluntarily withdrawn many of

the claims initially made in their complaint after the Defendant filed its motions for summary judgment. As a result, Plaintiffs have the following remaining claims:

1. *Linda Brown:* a) a hostile work environment claim based on race in violation of Title VII and § 1981; b) a hostile work environment claim based on gender in violation of Title VII; and c) a salary grade claim based on race in violation of Title VII.

2. *Catherine McAfee:* a failure to promote claim based on race in violation of Title VII and § 1981.

3. *John Grant:* a) a hostile work environment claim based on race in violation of Title VII and § 1981; and b) a failure to promote claim based on race in violation of Title VII and § 1981.

4. *John McDowell:* a) a hostile work environment claim based on race in violation of Title VII and § 1981; and b) a failure to promote claim based on race in violation of Title VII and § 1981.

5. *Phyllis Miller:* a hostile work environment claim based on gender in violation of Title VII.

6. *Susan Robertson:* a) a hostile work environment claim based on gender in violation of Title VII; and b) a failure to promote claim based on gender in violation of Title VII.

7. *Karen Sloan:* a hostile work environment claim based on gender in violation of Title VII.

Defendant has moved for summary judgment on all of the above listed claims on procedural and substantive grounds. Defendant asserts that most of Plaintiffs' claims are barred by the applicable limitations period under Title VII and/or § 1981. Also, Defendant argues that if the claims are not barred by limitations then Plaintiffs cannot meet the legal standard for establishing violations of Title VII or § 1981 and that Defendant's alleged conduct is not legally sufficient to be a violation under either statute. Plaintiffs contend that their causes of action are not barred by limitations because of the applicability of the continuing violation doctrine to their claims. Additionally, Plaintiffs argue that the Defendant's conduct does amount to violations of Title VII and § 1981, and therefore, they have viable causes of action against the Defendant.

## IV. LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *See id.* at 248, 106 S.Ct. 2505. The party moving for summary judgment has the burden to show that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. *See id.* at 247, 106 S.Ct. 2505. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986) (emphasis in original). But if the nonmovant bears the burden of

proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. In this instance, the movant is not required to offer evidence to negate the nonmovant's claim. *See Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 885–86, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED R. CIV. P. 56(e). The nonmovant must adduce affirmative evidence. *See Anderson,* 477 U.S. at 257, 106 S.Ct. 2505.

Summary judgment evidence is subject to the same rules that govern the admissibility of evidence at trial. *See Lavespere,* 910 F.2d at 175–76. In considering a motion for summary judgment, the court cannot make credibility determinations, weigh evidence, or draw inferences for the movant. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. The evidence of the nonmovant, however, is to be believed, and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.*

## V. IS THIS A PATTERN AND PRACTICE CASE OR SEVEN INDIVIDUAL CLAIMS?

■ As an initial matter, the court must determine what category this case falls under and what standard to use in adjudicating the claims involved. Defendant moved for summary judgment on the "individual" claims of each Plaintiff and treated each Plaintiff and claim completely separate from each other. To that end, the Defendant contends that the Plaintiffs' individual claims should be reviewed under the burden shifting framework outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). However, Plaintiffs have urged consideration of their claims as a "pattern and practice" case and not as individual lawsuits. Accordingly, Plaintiffs argue that the court should apply the standard set forth in *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), and address this case as a pattern and practice case.[5] Generally, the pattern and practice standard is reserved for cases brought by the government or cases that are certified as class actions.[6] Since the time of the

---

5. In a pattern and practice case, the plaintiffs must demonstrate the existence of a discriminatory pattern or practice. To establish a pattern and practice of discrimination, it must be established by a preponderance of the evidence that "racial discrimination was the company's standard operating procedure—the regular rather than the unusual practice." *Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (footnote omitted). Once this is established, a presumption arises that the individual class members had been discriminated against. While a finding of a pattern or practice of discrimination itself justifies an award of prospective relief to the class, additional proceedings are ordinarily required to determine the scope of individual relief for the members of the class. *See Id.* at 361, 97 S.Ct. 1843.

The Supreme Court in *Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 876, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984) outlined the distinction between the pattern and practice and *McDonnell Douglas* standards as follows:

> The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest. The inquiry regarding an individual's claim is the reason for a particular employment decision, while "at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decision making."

*Id.* at 876, 104 S.Ct. 2794 (quoting *Teamsters,* at 360 n. 46, 97 S.Ct. 1843).

6. "Although *Teamsters* involved an action litigated on the merits by the Government as plaintiff under § 707(a) of the Act, it is plain that the elements of a prima facie pattern-or-practice case are the same in a private class action." *Cooper,* at 876 n. 9, 104 S.Ct. 2794 (1984).

filing of Plaintiffs' summary judgment responses, class certification has been denied in this case. Apparently, however, Plaintiffs are continuing to pursue their case on a pattern and practice basis. The court does not view this as a pattern and practice case and the jurisprudence of the Fifth Circuit does not support such a position either.

In *Scarlett v. Seaboard Coast Line Railroad Co.*, 676 F.2d 1043 (5th Cir.1982), the court was presented with an argument that the court should address a multiple plaintiff case as a pattern and practice case, and therefore, should review the claims under the more lenient pattern and practice standard of proof. The court declined to view the case as such and found that:

> This is not a 'pattern and practice' suit by the government under section 707, 42 U.S.C. § 2000e–6, in which the government may postpone until the 'remedial' stage of trial proof that each individual for whom it seeks relief was discriminatorily denied an employment opportunity. [citations omitted] Nor is this a private class action, in which a similar manner of proceeding with the production of evidence is appropriate. [citations omitted] An individual proceeding as an individual under Title VII must prove the elements of a discriminatory hiring claim as set forth in *McDonnell Douglas*.

*Id.* at 1053. *But see Trevino v. Holly Sugar Corp.*, 811 F.2d 896 (5th Cir.1987) (reviewing the plaintiffs' proof on a pattern and practice claim when the case went to trial with individual plaintiffs without a class being certified or the government bringing suit.). The holding in *Scarlett* was cited with approval in *Lowery v. Circuit City Stores*, 158 F.3d 742 (4th Cir. 1998), *vacated by*, 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999) (on an unrelated issue), *on remand to*, 206 F.3d 431 (4th Cir.2000) (affirming its prior holding on the issue relevant to this case). The court in *Lowery* held:

> In sum, because the Supreme Court has never applied the *Teamsters* method of proof in a private, non-class action for employment discrimination, and because the nature of proof and remedies in class and government pattern or practice actions differs vis-a-vis private, non-class actions, we decline to give individual plaintiffs a pattern or practice cause of action or allow them to use the *Teamsters* method of proof.

*Lowery*, 158 F.3d at 761. In explaining this holding, the Fourth Circuit cited *Scarlett* and quoted from *Mooney v. Aramco Servs. Co*, 54 F.3d 1207 (5th Cir.1995), "[a] 'pattern or practice' claim is not a separate cause of action, but merely another method by which disparate treatment can be shown." *Mooney*, at 1219. Accordingly, this court finds that in this case that the Plaintiffs are required to satisfy the *McDonnell Douglas* standard of proof and are not entitled to use the *Teamsters* method of proof.

Defendant claims that many, if not all, of the Plaintiffs claims are barred by the applicable statute of limitations. The court will address the limitations issues first because a finding that a Plaintiff is barred by limitations will negate a discussion of any additional issues with regard to those Plaintiffs. However, some of the claims will require an inquiry into the merits of the various claims in order to engage in a continuing violation analysis.

VI. STATUTE OF LIMITATIONS UNDER TITLE VII AND § 1981 AND THE CONTINUING VIOLATION DOCTRINE

The limitations period contained in Title 42 U.S.C. § 2000e–5(e)(1) was intended by Congress to act as a statute of limitations. *See Zipes v. Trans World*

*Airlines, Inc.,* 455 U.S. 385, 393–94, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Generally, that limitations period is 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). However, in a state that provides a state or local administrative mechanism to address complaints of employment discrimination, a Title VII plaintiff must file a charge of discrimination with the EEOC within 300 days after the occurrence of the discriminatory conduct. *See Griffin v. City of Dallas,* 26 F.3d 610, 612 (5th Cir. 1994). Texas is such a state, and therefore, claimants in Texas have 300 days from the date of the alleged discriminatory act to file their claim with the EEOC. *See Huckabay v. Moore,* 142 F.3d 233, 238 (5th Cir.1998). If a plaintiff does not file a claim within 300 days, that claim is barred. The Supreme Court has explained that "[a] discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed." *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

In this case, all of the Plaintiffs filed their EEOC claims between May 27, 1997, and June 17, 1997. Although the exact date upon which each Plaintiff filed his or her charge is not certain, the earliest date before the court is May 27, 1997.[7] Counting back 300 days from May 27, 1997, the date for determining whether any alleged discrimination is timely is August 1, 1996. Therefore, without the application of some exception to the statute of limitations, events occurring prior to August 1, 1996 are barred by limitations.

 Several of the Plaintiffs' claims are also based upon 42 U.S.C. § 1981.

Section 1981 claims are governed by a two year statute of limitations. *See Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio,* 40 F.3d 698, 713 n. 22 (5th Cir.1994). Accordingly, Plaintiffs are allowed two years from the date of the alleged discriminatory act to file a lawsuit. Plaintiffs filed this lawsuit on June 30, 1997. Applying the limitations period, the discriminatory conduct complained of must have occurred after June 30, 1995.

 An equitable exception to the limitations period has been developed that may allow a plaintiff to maintain an action that would otherwise be barred by the statute of limitations.[8] The equitable exception arises when the unlawful employment practice manifests itself over time, instead of as a single discriminatory act or a series of discrete acts. *See Waltman v. Int'l Paper Co.,* 875 F.2d 468, 474 (5th Cir.1989). This exception is known as the "continuing violation doctrine." Notably, the Fifth Circuit has recognized that the application of this doctrine can be "inconsistent and confusing." *See Berry v. Bd. of Supervisors of L.S.U.,* 715 F.2d 971, 979 n. 11 (5th Cir.1983).

 The doctrine has two general applications, the first of which has two variations. First, the doctrine allows a plaintiff to revive, and make actionable, time-barred conduct if the plaintiff can link the time-barred conduct to some discrimination that occurred within the limitations period. This application of the continuing violation doctrine has been referred to as a "closely related" type of continuing violation. *See Hendrix v. City of Yazoo City,* 911 F.2d 1102, 1103 (5th Cir.1990). The Fifth Circuit has summarized its interpre-

---

7. The Plaintiffs' complaint states that all of the Plaintiffs filed their charges on or around June 17, 1997.

8. This doctrine is applicable to both Title VII and § 1981 claims. *See Perez v. Laredo Junior Coll.,* 706 F.2d 731, 733 (5th Cir.1983)

tation of the doctrine under this application as follows:

> The continuing violation theory relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period.... The core idea of the continuing violations theory, however, is that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated. The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights. At the same time, the mere perpetuation of the effects of time-barred discrimination does not constitute a violation of Title VII in the absence of independent actionable conduct occurring within the statutory period. Thus, a plaintiff can avoid a limitations bar for an event that fails to fall within the statutory period where there is a persisting and continuing system of discriminatory practices in promotion or transfer that produces effects that may not manifest themselves as individually discriminatory except in cumulation over a period of time.

*Huckabay v. Moore,* 142 F.3d. 233, 238–39 (5th Cir.1998) (quoting *Messer v. Meno,* 130 F.3d 130, 134–35 (5th Cir.1997) (omitting citations, quotation marks, and brackets contained in original)). The court further explained that:

> Although there is no definitive standard for what constitutes a continuing violation, the plaintiff must demonstrate more than a series of discriminatory acts. He must show an organized scheme leading to and including a present violation, [citations omitted], such that it is the cumulative effect of the discriminatory practice, rather than any

discrete occurrence, that gives rise to the cause of action. [citations omitted]

*Id.* at 239. In addition, the Fifth Circuit has developed three factors that a court should consider when determining whether the alleged conduct is a continuing violation. The district court is to consider the subject matter of the conduct (i.e. "Do the alleged acts involve the same type of discrimination tending to connect them in a continuing violation?"), frequency (i.e. "Are the alleged acts recurring or more in the nature of an isolated work assignment or employment decision?"), and permanence (i.e. "Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights?"). *Berry,* at 981. Also, the continuing violation theory requires the same type of discriminatory acts to occur both inside and outside the limitations period. *See id.* The basic principle that can be taken from the cases concerning this application of the continuing violation doctrine is that a plaintiff may rely on discriminatory conduct outside of the limitations period if one complained-of act occurred within the limitations period. In essence, a plaintiff can complain of conduct outside of the limitations period to bolster his complaint concerning conduct that occurred within the limitations period and use the prior acts when calculating damages.

■ A second variation of this first application of the doctrine is referred to as a "separate repeated" continuing violation. This type of continuing violation occurs when "an initial violation, outside the statute of limitations, is repeated later; in this case, each violation begins the limitations period anew, and recovery may be had for at least those violations that occurred within the period of limitations." *Hendrix,* at 1103. These violations are considered separate and distinct acts of discrimination.

Although this is referred to as an application of the continuing violation doctrine, it does not actually revive or connect any time barred discrimination or allow the barred conduct to be a basis for a discrimination claim. Under this theory, a plaintiff is only allowed to complain of incidents within the full limitations period preceding the filing of the complaint. *See Perez v. Laredo Junior Coll.,* 706 F.2d 731, 733–34 (5th Cir.1983).

■ An important aspect of the closely related application of the continuing violation doctrine was discussed in *Webb v. Cardiothoracic Surgery Associates of North Texas,* 139 F.3d 532 (5th Cir.1998). In *Webb,* a plaintiff alleged sexual harassment based on a hostile work environment. In affirming the district court's grant of summary judgment against the plaintiff, the Fifth Circuit focused on the plaintiff's awareness of the hostile work environment and whether the events outside of the limitations period "should have alerted the average lay person to act to protect his rights." *Webb,* at 537 (quoting *Glass v. Petro-Tex Chem. Corp.,* 757 F.2d 1554, 1560–61 (5th Cir.1985)). In other words, the doctrine will not act to include events that the average person should have realized were violative of civil rights laws. Therefore, in determining whether the continuing violation doctrine applies to certain events, the court must look to each event or to a series of events to see if the plaintiff should have been aware that the events constituted actionable discrimination. Therefore, to utilize the closely related type of continuing violation, the plaintiff must show some actionable wrong within the limitations period and that the plaintiff did not know and could not reasonably be expected to have realized that the time barred discriminatory conduct

was itself actionable until the time of the timely filed EEOC charge.

In order to revive many of their claims, the Plaintiffs proffer that a second application of the doctrine, that has been recognized by the Fifth Circuit, applies and relieves the Plaintiffs of the limitations bar. In *Abrams v. Baylor Coll. of Medicine,* 805 F.2d 528 (5th Cir.1986), the Fifth Circuit held "that to establish a continuing violation, a plaintiff must show some application of the illegal policy to him (or to his class) within the 180 days preceding the filing of his complaint." *Id.* at 534;[9] *see also Perez* at 734 (5th Cir.1983) (holding that "if the statutory violation occurs as a result of a continuing policy, itself illegal, then the statute does not foreclose an action aimed at the company's enforcement of the policy within the limitations period."); *Waltman* at 475 (holding that "[a] plaintiff can prove a continuing violation either by producing evidence of a series of discriminatory acts or by demonstrating that the defendant has a policy of discrimination."); *Downey v. S. Natural Gas Co.,* 649 F.2d 302, 304 (5th Cir.1981) (holding that "[w]here an employee charges an employer with continuously maintaining an illegal employment practice, he may file a valid charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of that practice."). The issue in *Abrams* was not whether this "policy" approach to the continuing violation doctrine was valid, but rather whether the existence of a policy was enough to relieve a plaintiff of the limitations bar or whether some enforcement of the policy within the limitations period was also required. As noted above, the Fifth Circuit determined that the appropriate application of the policy

---

9. Although the Fifth Circuit used the word "class" in its holding, *Abrams* was not a class action. Therefore, the court concludes that the use of the would class did not refer to a class of plaintiffs in a class action context.

approach was to require enforcement. However, enforcement against the plaintiff itself is not required. Under *Abrams,* enforcement of the policy against someone in the plaintiff's class is enough to survive limitations. In making this ruling, the Fifth Circuit relied upon *Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241 (5th Cir.1980) ("Firestone"). In *Firestone,* the Fifth Circuit remanded to the district court the issue of a continuing violation after the district court's original finding of no continuing violation was reversed. The *Firestone* case involved a defendant that was using an invalidated battery of tests upon which it based its employment decisions. It was alleged that the tests affected the ability of Spanish-surnamed employees to obtain a job. In instructing the district court on the law concerning the applicability of the doctrine, the Fifth Circuit stated that a continuing violation could be found and the plaintiff's case should not be dismissed if the factual record shows that the defendant continued to use the tests "for the purpose of a validation study [which] had a disparate effect upon the ability of Spanish-surnamed employees to obtain job opportunities." *Id.* at 249.

In *Abrams,* the court was presented with a situation in which the defendant had a policy of not allowing Jewish doctors to participate in a rotation in Saudi Arabia. The rotation in Saudi Arabia was a very lucrative position and many of the doctors wanted a chance to participate. The plaintiffs in *Abrams* applied time after time to participate in the rotation but were told that members of the Jewish faith were not allowed into Saudi Arabia and the plaintiffs were turned down every time. In response to the defendant's repeated refusal to allow them to participate, the plaintiffs filed suit claiming that they were

being discriminated against. Although the court found that the discriminatory policy was applied to the plaintiffs during the limitations period, the court still recited the previously cited rule. Under the holding in *Abrams,* as long as a discriminatory policy is in effect during the limitations period and the policy is enforced during the limitations period, the continuing violation theory can be applied to revive claims of other plaintiffs outside of the limitations period. According to *Abrams,* the plaintiff himself does not have to have the policy enforced against him, but rather, limitations is satisfied if a person in the plaintiff's class has had the policy enforced against him during the limitations period. However, in trying to limit the scope of the doctrine the court held that the "theory of continuing violation has to be guardedly employed because within it are the seeds of the destruction of statutes of limitation in Title VII cases." *Id.* at 533.

In *Perez v. Laredo Junior College,* 706 F.2d 731, 733–34 (5th Cir.1983),[10] a case decided prior to *Abrams,* the court was presented with a case in which a professor complained because he was not given a raise after receiving his doctoral degree. The institution for which he worked had a formal policy that a salary increase was only due if a professor received his doctoral degree in his teaching field. *See id.* at 732–33. Dr. Perez did not receive his degree in his teaching field and was denied the salary increase. In discussing the continuing violation doctrine, the Fifth Circuit stated that "[w]e assume that the continuing violation theory is available to remedy employment practices and policies that operate to deny employees their protected rights if the offending practice continued to be enforced during the limitations period." *Id.* at 733. In reversing the district court, the Fifth Circuit held that:

---

**10.** *Perez* was a § 1981 case. However, the Fifth Circuit looked to Title VII cases when discussing the continuing violation doctrine. *Id.* at 733.

If the college has, since denying Perez additional pay, paid such compensation to another faculty member who, like Perez, has a doctorate degree outside his teaching field, then the statute does not bar his claim. If, however, any such practice ceased more than two years ago, Perez would be asserting neither a continuing violation manifested by a number of incidents nor a continuing unlawful policy or practice.

*Id.* at 735 (footnotes omitted).

The Fifth Circuit has addressed this application of the continuing violation doctrine in other cases as well. In a series of cases where a plaintiff has challenged an entire promotion system, the court has held that the limitations period is inconsequential. *See e.g., Clark v. Olinkraft, Inc.,* 556 F.2d 1219, 1222 (5th Cir.1977). However, even when a promotion system is challenged, the plaintiffs are still required to show actionable discrimination within the limitations period. *See Fisher v. Procter & Gamble Mfg. Co.,* 613 F.2d 527, 540 (5th Cir.1980). In *Fisher,* after citing the rule in *Olinkraft,* the court stated that "[t]he challenged evidence was improperly considered, however, only if the district court viewed the prior discriminatory acts as constituting the actionable wrongs upon which relief was based." *Id.*

■ The primary difference between the two applications of the doctrine is that in the "closely related" application the plaintiff must have been the subject of discrimination during the limitations period. In the second application, there need not be a discriminatory act committed against the plaintiff personally as long as a discriminatory policy was in effect and was enforced against a plaintiff or a member of

the plaintiff's class during the limitations period.

### VII. THE HOSTILE WORK ENVIRONMENT CLAIMS

■ Plaintiffs Karen Sloan, Phyllis Miller, John Grant, John McDowell, Susan Robertson, and Linda Brown all have hostile work environment claims against Crown. To prevail on their hostile work environment claims, each Plaintiff must show that: (1) he or she belongs to a protected class; (2) he or she was subjected to unwelcome harassment; (3) the harassment was based upon his or her race and/or gender; (4) the harassment affected a term, condition or privilege of employment; and (5) Crown knew or should have known about the harassment experienced by the Plaintiff and failed to take prompt remedial action.[11] *See Hirras v. Nat'l R.R. Passenger Corp.,* 95 F.3d 396, 399 (5th Cir.1996). The court will now address the individual Plaintiffs' hostile work environment claims to determine if they are barred by limitations. For the claims that are not barred, the court will address the merits.

#### A. PLAINTIFFS KAREN SLOAN AND PHYLLIS MILLER

■ Plaintiffs Phyllis Miller and Karen Sloan ("Miller and Sloan") are Caucasian females who have been employed by Crown at its Pasadena refinery since the 1970's. Plaintiffs have sued Crown for hostile work environment sexual harassment in violation of Title VII.

Defendant has moved for summary judgment against both Plaintiffs alleging that their claims are barred by the applicable statute of limitations for Title VII claims.[12] Plaintiffs have responded by

---

**11.** Hostile work environment claims brought under Title VII and § 1981 are analyzed under the same standards. *See Patterson v. P.H.P Healthcare Corp.,* 90 F.3d 927, 940 (5th Cir.1996); *Johnson v. City of Fort Wayne,* 91 F.3d 922, 940 (7th Cir.1996).

**12.** Defendants have also attacked Plaintiffs' claims on substantive grounds, however, the

claiming that the statute of limitations does not bar their claims because the continuing violation doctrine applies. Specifically, Plaintiffs argue that the Defendant has a policy of engaging in a hostile work environment which was applied to a member of the Plaintiffs' class during the limitations period.

As noted previously, Miller and Sloan, along with the other class representatives, filed their charges with the EEOC on or about May 27, 1997, and filed this lawsuit on June 30, 1997. Since Miller and Sloan only have claims under Title VII, the 300 day limitations period applies. Accordingly, the discriminatory acts complained of by Miller and Sloan must have occurred after August 1, 1996, absent the applicability of the continuing violation doctrine.

The majority of the facts regarding both Miller's and Sloan's Title VII claims are undisputed. Miller and Sloan were employed by Crown from the mid 1970's to the present. However, even though they are currently employed by Crown or were employed at the time the summary judgment motions were filed, they have not actively worked at the Pasadena refinery or at any location for Crown since February 5, 1996. Both Sloan and Miller are members of the OCAW and were "locked out" on February 5, 1996, when a labor dispute came to an impasse. February 5, 1996, is six months prior to the operable limitations date of August 1, 1996. Therefore, common sense dictates that Miller and Sloan could not have experience harassment at their workplace at the hands of Crown employees during the limitations period because they were not present at the refinery. Consistent with this analysis, Miller and Sloan do not allege that they experienced any harassment after the date of the lockout. All of the alleged sexual harassment complained of by Miller and Sloan occurred prior to February 6, 1996. Accordingly, Miller and Sloan cannot utilize the "closely related" or "separate repeated" applications of the continuing violation doctrine discussed above because it is undisputed that they did not have any act of sexual harassment committed against them during the 300 day limitations period. Therefore, Miller and Sloan's only hope of saving their claims is with an application of the "policy theory" of the continuing violation doctrine. However, for the following reasons the court does not find that the policy theory of the doctrine is applicable to the claims of Miller and Sloan.

When the Fifth Circuit has applied the policy theory of the continuing violation doctrine, it has applied it in cases in which a defendant had a formal policy or procedure that discriminated against a class of persons. It is not that the challenged policy was facially discriminatory in every case, but rather, that the application of a company's formal policy discriminated against a class of people. For example, in *Firestone* a test used by the defendant to make promotion decisions was challenged as discriminatory; in *Abrams* the defendant had a formal policy of not allowing members of the Jewish faith to participate in a program; and in *Perez* the plaintiff challenged the application of a policy which disallowed a pay raise for certain doctoral degrees. Additionally, the court has applied the doctrine when an entire promotion system is challenged. In *Fisher v. Procter & Gamble Manufacturing Co.*, 613 F.2d 527 (5th Cir.1980), the court held "that notwithstanding [*United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)], where an entire promotion system is challenged on the basis that it operates to hold plaintiffs 'in lower echelons,' the 180 day statutory period is inconsequential in determining the

court does not reach those arguments due to

the limitations issues.

admissibility of prior discriminatory acts."
*Id.* at 540 (discussing *Clark v. Olinkraft, Inc.,* 556 F.2d 1219 (5th Cir.1977)).

The alleged company policy in this case is a policy to engage in or promote a hostile work environment. To prevail on their argument, Miller and Sloan would have to establish that Crown has a policy to promote a hostile working environment that was applied to a member of their class of employees during the limitations period. However, this court does not find the policy theory of the continuing violation doctrine to be applicable to the hostile work environment claims of Miller and Sloan. As noted above, the policy application of the doctrine has always been applied pursuant to some actual formal policy or procedure used by the defendant. In this case, the Plaintiffs cannot point to a formal policy to promote a hostile work environment or engage in sexual harassment at Crown. They simply argue that the various allegations made and comments and actions taken by employees of Crown amount to a company policy or procedure to encourage sexual or racial harassment. The court does not find that the various allegations of harassment are evidence of a formal company policy or procedure to promote or engage in a hostile work environment. To the contrary, the undisputed evidence before the court shows that the opposite is true. It is undisputed that Crown has a written policy against harass-ment and hostile conditions in the work place.[13] Although Plaintiffs allege that employees of Crown have engaged in inappropriate conduct toward other employees, these allegations do not amount to a formal policy to promote a hostile work environment, as required by Fifth Circuit precedent. The Plaintiffs offer evidence of instances of allegedly inappropriate conduct on the part of Crown employees, but not a formal policy to promote a hostile work environment. Crown responds with evidence showing that on many occasions when the conduct was reported, Crown investigated the accusations according to company policy. Accordingly, the court finds that the policy application of the continuing violations doctrine does not apply in this case because the Plaintiffs have not come forward with any evidence that Crown has a formal policy to promote a hostile work environment.

▇▇▇ The continuing violation doctrine is inapplicable to Miller and Sloan for an additional reason—in all of the cases discussed above, the complaining plaintiff was still employed at the facility at which the illegal policy was being enforced. Here, although Miller and Sloan were technically employed by Crown during the limitations period, they were not present at the facility to be affected by the alleged policy to promote a hostile work environment. Even under the "policy theory" this court finds that a plaintiff must still be *affected*

---

**13.** As this court noted in *Burrell v. Crown Central Petroleum, Inc.,* 121 F.Supp.2d 1076 (E.D.Tex.2000), Crown has the following policy against sexual harassment:

> An employee of the Company who feels he/she has been subjected to sexual harassment is strongly encouraged to bring to the Company's attention any conduct which violates this policy. No employee complaining about sexual harassment will be subjected to retaliation by the Company. It is the policy of the Company to investigate promptly and thoroughly any complaint of sexual harassment and take appropriate corrective action.
>
> Any employee who believes he/she has been the victim of sexual harassment, or has any knowledge of other employees engaging in sexual harassment is encouraged to report such conduct promptly to their supervisors. If the complaint cannot be resolved at this level, or the employee is uncomfortable discussing the situation with his/her supervisor, the employee is encouraged to discuss his/her complaint in confidence with their [sic] Human Resources Representative.

*Id.* at 1083.

in some way by the policy. If a plaintiff is not even present at the defendant's facility, it is difficult to find that the plaintiff was in fact affected by the alleged policy. It can be argued that past discriminatory acts in some circumstances can continue to affect a plaintiff into the limitations period, such as with a failure to hire, promote, or a release. However, the hostile work environment alleged by Miller and Sloan ceased to affect them on the day that they were locked out.

The court has not found a Fifth Circuit opinion, nor have the parties directed the court to one, in which the court has applied the policy theory to hostile work environment claims. In reaching its decision, however, the court is guided by *Abrams* and its progeny with their directive that the continuing violation doctrine should be "guardedly employed because within it are the seeds of the destruction of statutes of limitations in Title VII cases." *See Abrams* at 533.

Accordingly, this court finds that the continuing violation doctrine does not apply to the claims of Miller and Sloan. Therefore, summary judgment is GRANTED for the Defendant and against Miller and Sloan on their claims for gender based hostile work environment discrimination. Since hostile work environment claims were the only remaining claims of Miller and Sloan, all claims of Miller and Sloan are now dismissed from this case.

B. JOHN GRANT AND JOHN McDOWELL

■ Plaintiffs John Grant and John McDowell ("Grant and McDowell") are both African–American males who worked at Crown's Pasadena refinery. They were both members of the OCAW and were locked out on February 5, 1996. They both have race-based hostile work environment discrimination claims actionable un-

der violation of Title VII and § 1981, as well as, failure to promote claims based on Title VII and § 1981.

As with Miller and Sloan, Crown claims that Grant and McDowell's claims for hostile work environment discrimination, both Title VII and § 1981, are barred by limitations and that the continuing violation doctrine does not apply. Grant and McDowell make the same arguments in opposition that were made with regard to Miller and Sloan.

Like Miller and Sloan, both Grant and McDowell were locked out of the refinery on February 5, 1996. Accordingly, like Miller and Sloan they could not have been affected by a hostile work environment during the limitations period. Although Grant and McDowell's claims are based on race and not gender, the application of the continuing violations doctrine to their claims is the same as with the gender based harassment claims of Miller and Sloan. Therefore, for the reasons discussed above, summary judgment is GRANTED on Grant and McDowells' Title VII hostile work environment claims.

Grant and McDowell also have claims actionable under 42 U.S.C. § 1981. As discussed previously, the operable date from which to judge Grant and McDowell's § 1981 claims is June 30, 1995. This limitations date expands the time period, in comparison with the Title VII claims, during which the complained of conduct must have occurred. However, after reviewing the evidence in the light most favorable to Grant and McDowell, the court does not find that any complained of act occurred within this extended statute of limitations. In fact, the Plaintiffs admit in their responses to the motions for summary judgment that they have not experienced any racially motivated conduct by Crown directed toward them since June of 1995.[14]

14. "Despite the fact that Grant has not presented evidence of a racially hostile work environment since June of 1995." [Grant's response at p. 21].

Because Grant and McDowell have not been subjected to a hostile work environment during the limitations period and since the policy theory of the continuing violation doctrine does not apply to lift them above the limitations bar, summary judgment is GRANTED on these claims on the grounds that they are barred by limitations for the reasons outlined above.

Accordingly, summary judgment is granted for the Defendant on all of Grant's and McDowell's hostile work environment claims based on Title VII and § 1981. Their remaining failure to promote claims will be addressed later in this order.

### C. LINDA BROWN

■ Linda K. Brown ("Brown") is an African–American female who has been employed at Crown's Pasadena refinery since December 1988. Brown has sued Crown for hostile work environment gender and race discrimination in violation of Title VII and § 1981 and for a salary grade claim on account of her race. Defendant has moved for summary judgment on all of Brown's claims. Defendant argues that Brown's hostile work environment claims are barred by the statute of limitations. Brown counters that both policy and closely related applications of the continuing violation doctrine apply to her claims, and that she has had actionable harassment committed against her during the limitations period.

Brown makes numerous allegations of harassment occurring over a period of about 8 years. Her allegations describe both gender and race based discrimination resulting in a hostile work environment. The court will address her gender and race based claims separately to determine if either claim is timely.

As discussed previously, Brown is a supervisor at Crown and was not subject to the lockout that occurred in February of 1996. Accordingly, she was still working at Crown's Pasadena refinery on a daily basis at the time of the filing of these motions. As such, Brown could have been subjected to a hostile work environment during the limitations period. However, she filed her EEOC charge around the same time as the other Plaintiffs, so her Title VII claims are subject to the same limitations period. Brown argues that both the closely related and policy theories of the continuing violation doctrine are applicable to her claims. Since the court has previously determined that the policy theory does not apply to the hostile work environment claims alleged in this case, the policy theory will not apply to save the claims of Brown either. Therefore, Brown must rely on the closely related application of the doctrine, and therefore, must have had some actionable discrimination or harassment committed against her within the limitations period for her hostile work environment claims to survive.

Brown argues that the closely related application of the continuing violation doctrine should apply to her claims and revive all of her allegations that would otherwise be barred by limitations. As discussed above, to begin an analysis under the closely related application the plaintiff must have had some actionable harassment committed against her during the limitations period. In support of this argument, Brown alleges that she was subjected to one incident of sexual harassment within the limitations period. She says that she was discriminated against when she complained that a male employee was showing his stomach and cursing on the unit. Despite this allegation, the court

---

"Despite the fact that McDowell has not presented evidence of a racially hostile work environment since June of 1995." [McDowell's response at p. 20].

finds that the continuing violation doctrine will not apply to relieve Brown of the limitations bar.

To be actionable and survive summary judgment, Brown must bring forth evidence on each element of her hostile work environment claim. She alleges that because an overweight male employee's stomach was too large to fit in his shirt that she was subjected to a hostile work environment. However, she has presented no evidence that the male employee allowed his stomach to "hang out" of his shirt in order to elicit some response from Brown, or that he was directing this act toward Brown. Further, the conduct alleged by Brown is legally insufficient to support a sexual harassment claim. Brown's timely allegation simply does not qualify as sexual harassment under Title VII.

Even if this timely allegation was sufficient to qualify as sexual harassment, Brown's allegations prior to the limitations date are not subject to the continuing violation doctrine for an additional reason—as discussed, the continuing violation doctrine only applies to a plaintiff that was not aware or reasonably should not have been aware at the time of the unlawful employment act that the conduct was unlawful. Or stated another way, a knowing plaintiff cannot take advantage of the continuing violation doctrine. *See Webb,* at 538. In *Webb,* the court found that the plaintiff could not take advantage of the continuing violation doctrine because she should have been aware that conduct of her supervisor was unlawful and supportive of a Title VII claim at the time it occurred. *See id.* In this case, the evidence is clear that Brown should have been aware, or in fact thought at the time that the events occurred, that she was being discriminated against or harassed. With respect to every event she complains of, except for one, she either filed a report, removed the offensive material, reported the incident to someone, or admitted in her deposition that she knew that she could file a claim. Additionally, Brown was a supervisor with the authority to address discriminatory conduct. Accordingly, for the foregoing reasons, the Defendant's summary judgment motion is GRANTED as to Linda Brown's gender based hostile work environment claims.

■ Brown also has a hostile work environment claim based on race in violation of Title VII and § 1981. Although Brown was present at the refinery during the limitations period, Brown makes no allegation and has produced no evidence of any harassing conduct committed against her on account of her race during the 300 limitations period preceding the filing of her charge with the EEOC. Accordingly, summary judgment will be granted in connection with her Title VII race based hostile work environment claims because no actionable conduct was committed against her during the limitations period.

■ Additionally, Brown has claims under § 1981 for a hostile work environment based on race. Brown has alleged that some harassing conduct did occur during the two-year limitations period for § 1981 claims. Because the timely allegations must be actionable for any conduct outside the policy period to attach, the court will address the timely claims to determine if a continuing violation analysis is required.

Brown claims that she was subjected to a racially hostile work environment because one of her co-supervisors, Steve Vandiver, had a 16–20 inch confederate flag in his office and a picture of himself in a confederate uniform. She believes that the flag and picture were removed by Vandiver sometime around February 1996. However, Brown admits in her deposition that she never reported the presence of the flag or the photograph in Vandiver's

office to Crown. She further admits that she was aware of Crown's anti-harassment policy that required her to report any "discrimination or harassment … to the attention of his or her immediate supervisor or the Employee Relations Department."[15] When asked why she did not report the presence of the flag in Vandiver's office, Brown stated "I overlooked it". Def.'s Mot. for Partial Summ. J. on Plaintiff Linda K. Brown's Claim, Ex. A (Depo. of Linda Brown), pp. 169–170; Ex. B–5 (Crown's Equal Employment Opportunity Policy). Outside of the flag and photo in his office, Brown admits that she had never observed any conduct by Vandiver that would lead her to believe that he was prejudiced. Further, she admitted that she never heard him use any racially derogatory term and that she had a good working relationship with him. Additionally, Vandiver never made reference to the flag or photo or brought them to the attention of Brown. Because Brown failed to report this incident to Crown, Vandiver's possession of the Confederate flag and photo in his office is insufficient to support a hostile work environment claim based on race.

Therefore, the court GRANTS Defendant's motion for summary judgment as to all of Brown's hostile work environment claims.

D. SUSAN ROBERTSON

Susan Robertson ("Robertson") is a Caucasian female employed by Crown at the La Gloria Oil and Gas Company refinery located in Tyler, Texas. La Gloria is wholly owned by Crown. Although Robertson is a member of the OCAW, she was not locked out in February of 1996. Robertson works at the La Gloria refinery, and only OCAW members at the Pasadena refinery were locked out.

Therefore, Robertson was present at the refinery during the limitations period.

Robertson has claims for hostile work environment and failure to promote based on gender. Crown argues that some of Robertson's hostile work environment allegations are barred by the statute of limitation and that the remaining timely allegations do not support a claim for hostile work environment.

Although the exact date upon which the EEOC office received her charge of discrimination is not clear, the earliest possible date that the charge could have been received, as evidence by the date the notary witnessed her signing the charge, is May 27, 1997. Accordingly, for Robertson to have a valid claim for hostile work environment sexual harassment, she must have had some act of sexual harassment committed against her after August 1, 1996.

Robertson has alleged three instances of sexual harassment that occurred during the limitations period. First, she alleges that she was subjected to a hostile work environment because a stripper was allowed into the plant to perform at a retirement party for an employee. However, she was not present at the party and did not see the stripper in the refinery. Additionally, she did not complain to anyone about the party or the stripper. Second, she alleges that she was subjected to a hostile work environment because several employees that attended the stripper party were discussing the party in her presence and were making inappropriate comments about the stripper. Specifically, one of the male employees said that he had a "hard" time concentrating for the rest of the day emphasizing the word "hard." Third, she alleges that she was subjected to a hostile work environment because a male employ-

---

**15.** For further discussion of the law on an employee's duty to notify her employer of harassment, *see Burrell v. Crown Cent. Petroleum*, 121 F.Supp.2d 1076 (E.D.Tex.2000).

ee handed her three documents as he was cleaning out his desk upon retirement. One of the cartoons depicted a woman "before marriage" and "after marriage." Robertson says that she was offended because the cartoon depicts a woman before marriage as a princess and after marriage as an "old hag". The second cartoon depicted Mickey Mouse making an obscene gesture accompanied by some course language, including the "f" word. The cartoon stated "Thanks for parking so close. Next time leave a f\* \* \* \* \* can opener so I can get my car out. A\* \* \* \* \* \* like you should take the bus." The last document was an adult joke satirizing two people having an affair at a doctors office. Robertson concedes that the Mickey Mouse cartoon and the joke are equally offensive to men and women.

The court must look to whether the alleged harassment by Crown employees affected a "term, condition, or privilege" of Robertson's employment. The Supreme Court explained in *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) that, "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the plaintiff's] employment and create an abusive working environment.'" *Id.* at 67, 106 S.Ct. 2399 (citation omitted). Accordingly, not all harassment will affect a term, condition, or privilege of employment. *See id.* The "'mere utterance of an ... epithet which engenders offensive feelings in a employee' does not sufficiently affect the conditions of employment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting *Meritor,* 477 U.S. at 67, 106 S.Ct. 2399). "A recurring point in [Supreme Court] opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citation omitted). "Whether an environment is 'hostile' or 'abusive' is determined by looking at all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *See Shepherd v. Comptroller of Pub. Accounts,* 168 F.3d 871, 874 (5th Cir.1999). To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so. *See Harris,* at 21–22, 114 S.Ct. 367.

Whether Crown's employees' actions and comments rendered Robertson's working environment objectively "hostile" or "abusive" must be considered in light of the caselaw cited above. Robertson alleges that she took offence to the cartoons, stripper party, and the comments made about the party. The court agrees with Robertson that the actions and comments made by Crown employees were inappropriate for the workplace. However, the actions and comments were not severe enough to alter the conditions of her employment and create an abusive working environment and do not support a claim for sexual harassment. Additionally, none of the actions physically threatened Robertson, nor did the conduct interfere unreasonably with a "reasonable person's work performance". Furthermore, the conduct did not undermine Shepherd's workplace competence. *See Butler v. Ysleta Indep. Sch. Dist.,* 161 F.3d 263, 270 (5th Cir.1998) (considering, in addition to the other factors, that "[a] plaintiff ... must show that implicit or explicit in the sexual content is the message that the

plaintiff is incompetent because of her sex").

"Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace." *Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 194 (5th Cir.1996). Robertson's timely allegations, although offensive, are not the type of extreme conduct that would prevent her from succeeding in the workplace. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ("We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment."). For instance, if she was invited to the stripper party, forced to observe it, or ostracized for not attending it, then the offensive actions could "prevent her from succeeding in the workplace". Additionally, she did not even attend the party or observe the stripper in the work place. The conversation about the party, although inappropriate, was not directed at her and certainly did not cause her work environment to be "hostile" or "abusive." Likewise, the cartoons and the joke were crude and inappropriate but they were not severe. The cartoons were handed to her in passing by a retiring co-worker who was cleaning out his desk. After considering Robertson's allegations, the court finds the conduct to be equivalent to a mere utterance of an epithet that engenders offensive feelings, not the type of severe conduct that is actionable under Title VII.

The court concludes as a matter of law that the conduct alleged by Robertson did not render her work environment objectively "hostile" or "abusive." Because there is no actionable harassment during the limitations period, the continuing violations doctrine will not apply to revive any of the time barred allegations for the reasons discussed previously. Finding that Robertson had no actionable harassment committed against her during the limitations period, the court GRANTS Crown's motion for summary judgment on the hostile work environment claims of Robertson.

In summary, all of the hostile work environment claims of Plaintiffs are dismissed. The court will now turn to the remaining failure to promote and salary grade claims alleged by the Plaintiffs.

### VIII. FAILURE TO PROMOTE CLAIMS

Plaintiffs Grant, McDowell, Robertson, and McAfee all have failure to promote claims. When addressing claims for employment discrimination at the summary judgment stage, the focus is on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff. *See Grimes v. Texas Dept. of Mental Health and Mental Retardation,* 102 F.3d 137, 139 (5th Cir.1996) (citations omitted). Where, as here, a plaintiff bases his claims on circumstantial evidence rather than direct proof of discrimination, the case becomes subject to the three-step burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 793, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248,al 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Within that framework, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. *See Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404 (5th Cir. 1999) (citation omitted). To establish a prima facie case for a failure to promote claim, a plaintiff must show that: (1) she was within a protected class; (2) she was qualified for the position sought; (3) she was not promoted; and (4) the position she sought was filled by someone outside the protected class. *See Texas Dept. of Comty. Affairs v. Burdine,* 450 U.S. 248, 252–

53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Grimes v. Texas Dep't of Mental Health & Mental Retardation,* 102 F.3d 137, 140 (5th Cir.1996). A plaintiff need not prove his prima facie case at the summary judgment stage, but is only required to "provide evidence that raises a genuine issue of material fact concerning each element of her prima facie case." *Waltman v. Int'l Paper Co.,* 875 F.2d 468, 477 (5th Cir. 1989).

If the plaintiff succeeds in establishing a prima facie case, a presumption of discrimination arises and the burden of production shifts to the employer to articulate a legitimate non-discriminatory reason for the challenged employment action. *See Shackelford,* 190 F.3d at 404. If the employer is able to articulate such a reason, the presumption of discrimination disappears and the burden shifts back to the plaintiff to prove that the defendant's proffered reason is false and was given as a pretext for discrimination. *See id.* "Once a Title VII case reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination." *Id.* (citing *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 993 (5th Cir.1996)). It is against the backdrop of these standards that the court now considers whether the Plaintiffs' failure to promote claims survive the pending motions for summary judgment, if the court determines that the claims are timely.

### A. John Grant

 John Grant's ("Grant") failure to promote claim is his only remaining claim in this action. Grant asserts that he was discriminated against on account of his race when Crown failed to promote him to the position of Operations Supervisor in August of 1995, and instead promoted Wayne Moore, a Caucasian male. Defendants concede that Grant's claim is timely under § 1981, but argues that the Title VII claim based on failure to promote is barred by limitations. Since failure to promote claims are subject to the same standard under both statutes, the court will address the merits of Grant's timely allegation.

First the court must determine if Grant has established his prima facie case. Grant claims, and the Defendant concedes, that he was technically qualified for the position filled by Wayne Moore. However, Crown argues that Grant was not practically qualified because of his absentee history. Crown argues that employees with attendance records like Grant's are not considered for promotions to supervisor. Additionally, Grant is African–American, and therefore, is a member of a protected class. The evidence also shows that he was not promoted and the position was filed by someone outside of his protect class, namely a Caucasian male. Accordingly, Grant has established a prima facie case. Thus, the burden shifts to the Defendant to articulate a non-discriminatory reason for its actions.

 Crown's non-discriminatory reason for not promoting Grant was his poor attendance record. Crown has produced evidence that Grant missed 316 days of work between 1990 and 1995. Crown also produced evidence that attendance is a necessary qualification for any supervisory position at its facilities and employees with poor attendance are not considered for supervisory positions. Further, Grant does not dispute Crown's statement that it considered an employee's attendance record before it made a promotion decision. Crown does not dispute the fact that "but for" Grant's lackluster attendance record, both Grant and Moore were equally qualified for the position. The court finds that Crown has articulated a non-discriminatory reason for not promoting Grant.

Therefore, Grant must come forward with some evidence to create a fact issue that Crown's proffered reason for not promoting Grant is pretextual. A plaintiff may demonstrate pretext either by showing that a discriminatory motive more likely motivated the employer or that the employer's explanation is unworthy of credence. *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 813 (5th Cir.1991).

Grant contends that Crown's proffered non-discriminatory rationale for not hiring him is pretext because when he was "stepped up" to a supervisory position his attendance was perfect and that he is more qualified for the position based on his experience and education. Grant also argues that Crown's discriminatory intent in not promoting him is evident in the fact that Crown did not advertise that the position was open. However, it is Crown's policy not to advertise openings in supervisory positions.

Crown relies solely on Grant's absentee history for not considering him for the Operations Supervisor position given to Wayne Moore. As discussed, this reliance is two-fold. Crown argues first that Grant was not qualified to be a supervisor because of his absentee history, and second, that even if he was qualified, Grant's absentee history was the non-discriminatory reason for not promoting him to supervisor. Further, Crown has produced evidence that attendance is taken into consideration in hiring supervisors. The court agrees that an employee's attendance is a valid non-discriminatory criteria when making promotion decisions. Grant's only response to the absentee history argument is that when he was stepped up into a supervisory position, he had perfect attendance. Grant has produced no evidence that Crown does not usually use attendance history in making hiring decisions, or that other employees with similar attendance records have been promoted to supervisor over similarly qualified candidates with better attendance records, or that white employees with poor attendance are promoted to supervisor. Accordingly, Grant has not carried his burden of creating a fact issue regarding Crown's non-discriminatory reason for not promoting Grant. Therefore, summary judgment is GRANTED on Grant's failure to promote claim.

### B. John McDowell

John McDowell ("McDowell") has two remaining claims for a failure to promote based on race. McDowell claims that he was discriminated against on account of his race when Crown failed to promote him to two positions in the Operations Department that were filled in August and September of 1995 by Caucasian males, Wayne Moore and John Boretski, which violated his rights under § 1981. The position filled by Wayne Moore is the same Operations Supervisor position that John Grant claims to have been discriminatorily denied. The position that John Boretski was promoted to was an Operations Foreman position, although there is some confusion about Boretski's actual title. Defendant appears to concede that McDowell's claim is timely under § 1981, therefore, the court will address the merits of Grant's allegation.

### 1. The Operations Supervisor Position Filled by Wayne Moore.

██ The court must determine if McDowell can establish a prima facie case of discrimination, thus shifting the burden to Crown to articulate a non-discriminatory reason for not promoting McDowell. As with Grant, the dispute in this claim centers around the qualifications for the job and Crown's non-discriminatory reason for not promoting McDowell. However, unlike with Grant, Crown does not concede that McDowell was even technically quali-

fied for the job. Actually, Crown argues that he was not even minimally qualified for the position. In support of his claim, McDowell relies only on his deposition testimony and his belief that he was qualified for the Operations Supervisor position filled by Moore. McDowell does not list the qualifications for the position or show evidence that he satisfies any actual hiring criteria. Crown argues that to be considered for the position the applicant must be "senior qualified" as a Stillman in Zone III and that McDowell was not even working in Zone III at the time the decision was made to promote Moore. Additionally, Crown claims that McDowell was not qualified for the position because he had been disqualified from another department and it is the policy of Crown not to consider employees for the Operations Supervisor position when they have a disqualification. However, Crown could not point to any actual policy addressing this issue and when asked about it Moore did not know whether any such policy existed or not. Regardless, the court does not find that McDowell has adequately shown that he was qualified for the position. The only evidence presented is McDowell's belief that he was qualified because of his seniority at Crown and his education and training. He has failed to show what the job qualifications are and that he satisfies those qualifications. Accordingly, the court finds that McDowell has not established a prima facie case of failure to promote because he has not shown that he was qualified for the position. Therefore, summary judgment is GRANTED on McDowell's claim for a failure to promote based on the promotion of Wayne Moore to the position of Operations Supervisor in August of 1995.

2. The Operations Foreman Position Filled by John Boretski.

Again, under the *McDonnell Douglas* analysis, McDowell must establish a prima facie case of failure to promote to shift the burden to Crown. As with his claim for the Operations Supervisor position, McDowell presents no evidence and relies solely on his own assertions and beliefs as represented in his deposition testimony. He does not bring forth any specific evidence as to the qualifications for the position sought or corresponding evidence that he satisfies those qualifications. Accordingly, the court finds that McDowell has not established a prima facie case of failure to promote because he has not shown that he was qualified for the position. Therefore, summary judgment is GRANTED on McDowell's claim for failure to promote based on the promotion of John Boretski to the position of Operations Supervisor in September of 1995.

C. Susan Robertson

Susan Robertson ("Robertson") has two remaining claims for failure to promote based on gender. Robertson alleges that she was discriminated against on account of her gender when Crown failed to promote her on two separate occasions. She complains that she was discriminated against in 1995 when she was denied a promotion to Lab Supervisor and in 1998 when she was denied a promotion to Senior Safety Supervisor. Defendant concedes that the claim to the Senior Safety Supervisor position is timely, but argues that the 1995 claim is barred by limitations. The court will first address the merits of the 1998 claim before engaging in a continuing violation analysis on the 1995 claim.

1. The Senior Safety Supervisor Position Filled in 1998.

 At this stage, Robertson has the burden to provide evidence that raises a genuine issue of material fact concerning each element of her prima facie case. As

one element of her prima facie case, she must show that she was qualified for the Senior Safety Supervisor position filled by Ted Lilly in January 1998. However, as with the other Plaintiffs, she has failed to do so. It is her burden to show she is qualified. To make this showing, she must at least show what the qualifications are so the court can determine from the evidence in the record whether she was qualified. She makes no such showing and simply cites to her OSHA training, leadership training, and work experience, along with her subjective belief that she could perform the job. Crown, on the other hand, produces evidence concerning the qualifications for the Safety Supervisor position. The evidence produced by Crown shows that the minimum qualifications for the position were (1) five years of industrial safety experience, (2) advanced knowledge of accident prevention, loss prevention, and emergency first aid, (3) supervisory experience, and (4) knowledge of OSHA regulations and a demonstrated ability to administer such regulations. Additionally, Crown requires a minimum education of an associates degree in a safety related discipline. The evidence before the court is clear that Robertson did not have an associates degree in a safety related discipline, nor does Robertson contend that she had such a degree. Accordingly, Robertson was not minimally qualified for the position of Safety Supervisor, and therefore, could not have been discriminatorily denied the position. This determination does not even address the fact that Ted Lilly, who actually received the position, was exceptionally more qualified than Robertson. Lilly had eight straight years of experience in industrial Safety and a Masters of Science degree in Training and Development. So, even if Robertson could have carried her prima facie case burden,

it is unlikely that she could show that Crown's reason for hiring Lilly (his exceptional qualifications) was pretextual.

Accordingly, the court finds that Robertson has not established a prima facie case of failure to promote because he has not shown that she was qualified for the position. Therefore, summary judgment is granted on Robertson's claim for a failure to promote based on the promotion of Ted Lilly to the position of Safety Supervisor in January of 1998.[16]

### 2. The 1995 Lab Supervisor Position

■■■ Crown moved for summary judgment on this claim on the grounds that it is barred by the statute of limitations. Since this claim is based only on Title VII, this claim is subject to the limitations date of August 1, 1996. Clearly, this claim is not within the limitations period. Therefore, as with many of the other claims, for Robertson to survive summary judgment on this claim the continuing violation doctrine must apply. However, for the reasons that the continuing violation doctrine does not apply to relieve Catherine McAfee of the limitations bar, the doctrine will not relieve Robertson of the limitations bar either. *See* discussion *infra* Part VIII.D. Accordingly, summary judgment is granted on this claim.

### D. CATHERINE MCAFEE

Catherine McAfee is an African–American female who has been employed at Crown's Pasadena plant since April of 1976. McAfee has one remaining claim in this litigation. Her sole remaining claim is a failure to promote claim based on Title VII and § 1981, which occurred in April of 1992. Defendant asserts that McAfee's failure to promote claim is barred by the

---

**16.** Additionally, this claim could not have been the basis for Robertson's lawsuit or

EEOC charge since the promotion of Ted Lilly did not occur until after the lawsuit was filed.

statute of limitations. McAfee makes the same arguments which were made by the other Plaintiffs. The court finds that McAfee's claim is not saved by the continuing violation doctrine and summary judgment should be GRANTED.

■ McAfee complains that Crown failed to promote her to an administrative assistant position in April of 1992. Clearly, this alleged act of discrimination occurred outside of the statute of limitations. Therefore, to avoid summary judgment on McAfee's claim, she must show that the continuing violations doctrine applies to her claim.

Plaintiff argues that her claims are timely because of the policy theory of the continuing violation doctrine. However, even though the Fifth Circuit has applied the policy theory when an entire promotion system has been challenged, a current violation is still required. *See Fisher v. Procter & Gamble Mfg. Co.*, 613 F.2d 527, 540 (5th Cir.1980). Although language from certain Fifth Circuit cases appears not to require a current violation, *see e.g., Clark v. Olinkraft, Inc.*, 556 F.2d 1219, 1222 (5th Cir.1977), the Supreme Court in *Evans* made it clear that "the critical question is whether any present violation exists." *See Evans*, at 558. The *Fisher* court recognized this fact and analyzed the district court judgment before it to make sure that the court's judgment was not based on past discrimination, but on a current violation. *See Fisher*, at 540. In this case, no present violation exists. That is, no actionable claim for a failure to promote has been committed during the limitations period. It has been shown that the timely failure to promote claims that were alleged do not violate Title VII or § 1981. Accordingly, since no present violation has been shown, the policy theory of the continuing violation doctrine will not relieve McAfee of the limitations bar.

However, McAfee's claim fails for other reasons as well.

Historically, individual failure to promote claims have been allowed to utilize the continuing violation exception to a limitations defense. *See Trevino v. Celanese Corp.*, 701 F.2d 397, 402–03 (5th Cir.1983) ("discriminatory failure to promote represents an actionable, continuing violation of Title VII under the jurisprudence of this Circuit."). However, more recent precedent from the Fifth Circuit has strayed from that position and the doctrine may no longer apply to a claim such as McAfee's. In *Huckabay v. Moore*, 142 F.3d 233 (5th Cir.1998), the Fifth Circuit held:

> Similarly, Moore's failure to promote Huckabay is an isolated occurrence apart from the continuously violative hostile environment. These discrete adverse actions, though racially motivated, cannot be lumped together with the day-to-day pattern of racial harassment, for they were isolated occurrences *that should have put Huckabay on notice* that a claim had accrued. Therefore, because these otherwise untimely claims are not continuing violations, Huckabay cannot recover for his demotion or failure to be promoted.

*Id.* at 240 (emphasis added). As the *Huckabay* court clearly held, a failure to promote is an isolated occurrence that should have put McAfee on notice that a claim had accrued. Accordingly, McAfee's claim is not timely and is barred by the statute of limitations.

Additionally, McAfee's claim fails because the continuing violation doctrine only applies to a plaintiff who was not aware at the time of the unlawful employment act that the conduct was discriminatory. *See Webb*, at 538. In *Messer v. Meno*, 130 F.3d 130 (5th Cir.1997), the Fifth Circuit reversed the trial court's decision to grant summary judgment for the defendant on

the grounds that the trial judge ignored the plaintiff's theory of the case that the defendant systematically promoted employees based on race and gender. However, in reversing the trial court, the Fifth Circuit noted that because the plaintiff had been employed by the defendant for 14 years before being denied a promotion, "one wonders that she did not know enough to file a timely discrimination complaint." *See Messer*, at 135. The court left that issue open for the district court on remand because it was not previously addressed. Therefore, even when the plaintiff is challenging a promotion system, the plaintiff's knowledge of the discriminatory system is still important. Claims can still be barred by limitations if Plaintiffs thought they were being discriminated against at the time the failure to promote occurred and did not file a timely charge with the EEOC, even if the plaintiff is challenging an entire promotion system. By McAfee's own admission she was concerned at the time of the events in April of 1992 that she was being discriminated against because of her race.[17] McAfee's belief that she was being discriminated against in April of 1992 triggered her duty to assert her rights. Accordingly, for the foregoing reasons, the Defendant's summary judgment motion is granted as to Catherine McAfee's claims and these claims are dismissed from this case.

IX. SALARY GRADE CLAIM OF LINDA BROWN

For Linda Brown ("Brown") to establish a prima facie case of racial discrimination with respect to compensation, she must show: (1) she is a member of a protected class; (2) she performed substantially the same responsibilities as a Caucasian in a similar position; and (3) she was paid less than a Caucasian in a similar position. *See Pittman v. Hattiesburg Mun. Separate School Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981). If Brown makes this showing, the defendant must then show a non-discriminatory reason for the variation in pay. If the defendant articulates such a reason, Brown then has the burden of showing pretext.

Linda Brown claims that she was discriminated against on account of her race. Brown was promoted from a zone supervisor to a zone superintendent, in September of 1995. However, unlike Steven Vandiver, a Caucasian male, she was not given a raise to a Salary Grade 12 when she was promoted. She remained at a Grade 11. Brown contends that she was discriminated against because, of the four superintendents in operations, the two white superintendents were paid at a salary Grade 12 while the two African–American superintendents (including Brown) were paid at a Grade 11. She claims that all four zone superintendents performed substantially the same job.

■■■ As noted, Brown must first establish her prima facie case to shift the burden to the Defendant. There is no real dispute that Brown is able to establish her prima facie case. Instead, the Defendant focuses on its non-discriminatory reason for the variations in salary and does not argue that a prima facie case cannot be made. The court agrees and finds that Brown has carried her burden and that the three elements of a prima facie case of salary discrimination have been satisfied.

---

**17.** The following dialogue occurred during McAfee's deposition:

Q: Well, at the time that Ms. Middleton is introduced to you as the new manufacturing administrative assistant, at the time did you form the belief that you weren't considered for this position because you're black?
A: Yes.
Q: Okay. Were you upset or disappointed at that time?
A: Yes.

The question here is whether Crown's non-discriminatory reasons are pretextual.

Crown argues that the variations in salary are due to differences in skill base, knowledge, and competency. Specifically, Crown argues that the two Caucasian superintendents, Vandiver and Cantrell, had a higher skill base, knowledge, and competency than that of the African–American superintendents Brown and Cumby.

The court finds that Brown has raised a fact issue on the issue of pretext. In discussing its non-discriminatory reason for the variations in salary grade, Defendant relies on a chart it produced showing each zone superintendent's dates of hire and promotion. Although Crown provided the chart to support its defenses, the court finds that the chart actually supports the claims of the Plaintiff. The following is a reproduction of that chart:

| | BROWN | VANDIVER | CANTRELL | CUMBY |
|---|---|---|---|---|
| **Title** | Zone I Superintendent (9/95) | Zone III Superintendent (4/93) | Zone II Superintendent (1993) | Zone IV Superintendent (9/95) |
| **Hire Date** | 12/12/88 | 4/12/76 | 1965 | 5/7/79 |
| Supervisory Employment History | 12/88 - Shift Foreman 4/93 - Training Coordinator 3/95 - Operations Supervisor 9/95 - Zone I Superintendent | 5/87 - Shift Foreman 9/92 - Zone III Supervisor 4/93 - Zone III Superintendent | 5/81 - Terminal Foreman 10/81 - Operations Foreman 9/83 - Operations Supervisor 4/93 - Operations Superintendent | 12/87 - Operations Foreman 4/93 - Operations Supervisor 9/95 - Operations Superintendent |

Crown summarizes its argument by stating "Given Cantrell and Vandiver's greater tenure at Crown, in supervisory positions and in the Zone Superintendent position, they had an opportunity to acquire, and did acquire, a greater skill base, knowledge, and competency in the Zone Superintendent position." Crown's Br. in Support of Summary Judgment on Linda Brown's Claims at 24. Further, Crown argues that "both Cumby and Brown had less than six months experience as a superintendent prior to the February 1996 lockout." Crown's Br. in Support of Summary Judgment on Linda Brown's Claims at 25. As Plaintiff points out, Crown's proffered non-discriminatory reason is tenuous at best and not supported by the evidence. The court agrees. First of all, Crown's argument that the salary variations are based in part on the time that an employee has been a superintendent is completely without merit. Vandiver and Cantrell were raised to a Salary Grade 12 at the time that they were promoted to superintendent. Therefore, the time that

they have spent as superintendents or for that matter the time that Brown and Cumby were in the position of superintendent is inconsequential. Crown made the decision at the time that Vandiver and Cantrell were promoted to raise their salary grade. In no way could that decision have been based on the time spent as a superintendent because they were not yet superintendents. Further, the arguments made by Crown concerning tenure at Crown and tenure in a supervisory position are not clearly supported by the evidence. As the chart shows, Cumby and Vandiver were hired by Crown within about a three-year time period. Cantrell on the other hand was hired 11 years prior to Vandiver, and Brown was hired 12 years after Vandiver. In fact, when Vandiver was promoted to superintendent and raised to a Grade 12, he had 17 years experience at Crown. When Cumby was promoted to superintendent and not raised to a Grade 12, he had 16 years of experience. These similarities or variances in tenure at least create a fact issue as to whether Crown's non-discrimi-

natory reason of tenure at Crown is legitimate. If anything, Vandiver and Cumby are more comparable than Vandiver and Cantrell.

As to Crown's argument concerning tenure in supervisory positions affecting salary grade, the court finds the evidence does not support Crown's assertion. Looking at the chart, Brown, Vandiver, and Cumby were all initially promoted into supervisory positions within one year of each other, while Cantrell was promoted six-years prior to all three. So, Brown, Vandiver, and Cumby had more comparable experience in supervisory positions than Vandiver and Cantrell. As with Crown's argument regarding tenure at the refinery, Vandiver is more similar to Brown and Cumby than to Cantrell when comparing supervisory experience. Because Crown bases its higher competency, skill base, and knowledge rationale on the supervisors years of service and positions held, and because the court does not find that the evidence presented supports Crown's rationale, the court finds that a fact issue exists as to whether Crown's proffered non-discriminatory reason is pretextual. Accordingly, the court denies Crown's motion for summary judgment on Brown's salary grade claim.

### X. CONCLUSION

In summary, the court makes the following rulings on the pending motions:

1. Defendant's Motion for Partial Summary Judgment on Plaintiff Catherine McAfee's is GRANTED.
2. Defendant's Motion for Partial Summary Judgment on Plaintiff Karen Sloan's Claims is GRANTED.
3. Defendant's Motion for Partial Summary Judgment on Plaintiff Phyllis Miller's Claims is GRANTED.
4. Defendant's Motion for Partial Summary Judgment on Plaintiff John Grant's Claims is GRANTED.
5. Defendant's Motion for Partial Summary Judgment on Plaintiff Susan Robertson's GRANTED.
6. Defendant's Motion for Partial Summary Judgment on Plaintiff John McDowell's Claims is GRANTED.
7. Defendant's Motion for Partial Summary Judgment on Plaintiff Linda K. Brown's Claims is GRANTED as to her hostile work environment claims and DENIED as to her salary grade claim.
8. Plaintiffs' Motion to Strike Defendant's Objection to the Declarations of Robertson and McDowell GRANTED.
9. Defendant's Request for a Status Conference is DENIED as moot.

Accordingly, Brown may proceed on her salary grade claim, but the claims of Sloan, Miller, McAfee, Robertson, McDowell, and Grant are all dismissed from this case.

It is so ORDERED.